Robert C. Gamez #131401
_____
Name and Prisoner/Booking Number

A.S.P.C. Florence Central Unit
_____
Place of Confinement

P.O. Box 8200
_____
Mailing Address

Florence, AZ 85132
_____
City, State, Zip Code

**(Failure to notify the Court of your change of address may result in dismissal of this action.)**

FILED ✓   ___ LODGED
___ RECEIVED ___ COPY

MAR 2 2 2011

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Robert CARRASCO Gamez JR.          )
_____    )
(Full Name of Plaintiff)           )
                    Plaintiff,     )
                                   )
          vs.                      )   CASE NO. CV-10-2070-PHX-JWS-(MEA)
                                   )   (To be supplied by the Clerk)
(1) Charles L. Ryan (Director) et al, )
_____    )
(Full Name of Defendant)           )
(2) DR. Dennis Kendall             )
_____    )
(3) Dora B. Schrico                )   **CIVIL RIGHTS COMPLAINT**
_____    )   **BY A PRISONER**
                                   )   Jury Trial Demanded
(4)                                )   ☐ Original Complaint
_____    )   ☒ First Amended Complaint
                    Defendant(s).  )   ☐ Second Amended Complaint
☐ Check if there are additional Defendants and attach page 1-A listing them. )

## A. JURISDICTION & Venue

1.    This Court has jurisdiction over this action pursuant to:
      ☒ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
      ☐ 28 U.S.C. § 1331, <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971).
      ☐ Other: _____

2.    Institution/city where violation occurred: A.S.P.C. Central Unit, Florence, Ariz.

**550/555**

## B. DEFENDANTS

1. Name of first Defendant: Charles L. Ryan. The first Defendant is employed as: Director at A.S.P.C Florence
   (Position and Title) (Institution)

2. Name of second Defendant: Dr. Dennis Kendall. The second Defendant is employed as: Facility Health Administration at A.S.P.C Florence
   (Position and Title) (Institution)

3. Name of third Defendant: Dora B. Schriro. The third Defendant is employed as: Director at A.S.P.C Florence
   (Position and Title) (Institution)

4. Name of fourth Defendant: _____. The fourth Defendant is employed as: _____ at _____
   (Position and Title) (Institution)

**If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.**

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?    ☒ Yes    ☐ No

2. If yes, how many lawsuits have you filed? One . Describe the previous lawsuits:

   a. First prior lawsuit:
      1. Parties: Robert C Gamez Jr. v. Ryan et Al.
      2. Court and case number: District Court of Arizona : 2:10-CV-01743 JWS (MEA)
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) Pending

   b. Second prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) _____

   c. Third prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) _____

**If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.**

## B. Defendants

page 2-B

Each defendant is sued individually and in [His or Her] official capacity. At all times mentioned in this complaint each defendant acted under the color of state law.

## D. CAUSE OF ACTION

### COUNT I

1. State the constitutional or other federal civil right that was violated: _____
14th Amendment of the U.S. Constitution "Due Process & Equal Protection Clause"

2. **Count I.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☒ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count I. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

The Constitution guarantees prisoners Adequate Medical services, even though it does not guarantee medical care to individuals outside of prison because, as one court explained "An inmate must rely on prison Authorities to treat his medical needs; If the Authorities fail to do so, those needs will Not be met Estelle V. Gamble, 429 U.S. 97, 103 (1976)
        Under the eighth Amendment Prisoners are entitled to Adequate mental health services under Americans with Disabilities Act. Defendants have shown Deliberate Indifference in failing to Provide those rights to Prisoners under the Disabilities Act therefore resulting in Discrimination
Discriminatory Tendency occur when Defendants offer lower custody Better services (MH) Than those in Higher custody. The equal Protection Law Also ensures Adequate medical services for ADA. Since Prisons Incarcerate Prisoners All Prisoners Are similarly situated But we Are not All treated the Same.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
Declining ~~Med~~ Psychological and Physical Pain. Defendants have Demonstrated Deliberate Indifference, Emotional Pain.

5. **Administrative Remedies:**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?    ☒ Yes    ☐ No
   b. Did you submit a request for administrative relief on Count I?    ☒ Yes    ☐ No
   c. Did you appeal your request for relief on Count I to the highest level?    ☒ Yes    ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

page 3-A

# Course of Action

Defendants Are Required to establish procedures And standard for Mental Health services designed to meet the treatment, Applicable to All Department staff who Are responsible of supervision or treatment of All offenders who receive Mental health services.

1. Mental health programming shall include individual counseling And group therapy.

Defendants Are Also responsibil for screening those inmates who have demonstrated behavior Associated with a Mental disorder or have a syndrome Associated with an organic brain dysfunction or have A developmental disability.

Plaintiff suffers from a deteriorating mental health illness caused by the Defendant. Defendant have recklessly failed to carry out their statutory obligation to establish Appropiate treatment And programs, And have shown "Deliberate Indifferance" by denying Plaintiff access to its policies, procedures and customs promised under the U.S. Constitution by the eighth Amendment Estelle V. Gamble, 429 U.S. 97, 104 (1976). In failing to comply with these standards Defendants have shown "Deliberate Indifference" to "Plaintiff's claim, by also inflicting "Unnecessary And wanton Infliction of pain" while acting under the color of State Law.

Over A period of eighth years Defendant's have [Repeatedly] subjected the plaintiff to "Cruel And Unusual" Punishment. By no stretch of the imagination Am I [exclusively] suggesting that 23½ hours a day contributes to exacerbate behavior, nor Am I denying it, But if it please the court I'd endoy this benefit to elaborate on plaintiff vague Initial Complaint. As a result of Defendants repeated deprivation of Adequate Mental Health services the plaintiff suffers A serious Decline in mental And physical functioning i.e. Suicidal tendency, sensory deprivation, schizophrenic, somatic, anxiety, depression, unfocused frustration, bothersome recurring thoughts, A strong sense of Alienation, ideas of Allusive fear, severe delusion, insomnia, sharp weight loss, social phobia, Panic Attacks, Diminish Capacity (Brain-Damage), PTSD, inter Alia.,

Defendant have kept plaintiff in Long-term isolation without provid-him Adequate Mental health treatment. There has been clear notice that

Page 3-B

practice violates the constitutional rights of plaintiff. This signals that the Law has reached or is rapidly approaching the point that courts will no longer accept the notion that police officials can routinely deal with the difficult behavior problems posed by Mentally ill prisoners simply by locking them into their cells for 23 hours per day. Jones EL V. Berge, 164 F. Supp 2d. 1096 (W.D. Wis 2001); In Madrid V. Gomez, 889 F. Supp. 1146 (N.D. Cal. 1995) Holding that [substandard] conditions in security housing unit which contained the most troubled and violent inmates created a self-perpetuating situation in which prisoners deteriorated further due to Lack of proper mental health care and guidance. A "severe" mental illness is one that has caused significant disruption in an plaintiffs everyday life, and which prevents his functioning in the general population without disturbing or endangering others or himself. Plaintiff was imprisoned from 1997 till 2000. On 21 Oct 1997, Plaintiff under went a psychological evaluation at the Phoenix Reception Center. Psychopathology acute symptoms or problems with the regard of some suggestions for intervention by a Jeffrey Woolley Psychology Associate II Professional were concluded. At the time of this evaluation A.D.O.C relied on Mental health consideration from psychometric Data which also provides the following:

The reader is reminded that the findings reported here are probability estimates based exclusively on psychometric data. They are thus in most cases better predictors of outcome than expert Judgement But they may err seriously due to inability to consider individual circumstances. The ultimate mental health diagnoses and decisions are by Law. the designated function of properly trained Licensed psychologists or psychiatrists.

Plaintiff recidivisted into the Arizona Department of Corrections on July 2003. Plaintiff was held at the Phoenix Reception Center for Approx. Three hours. Within that time plaintiff was not provided Adequate mental health screening at intake. Screening of prisoners for psychiatric problems is required. Arnold on behalf of H.B V. Lewis 803 F. Supp 246, 253 (D. Ariz. 1992) Lack of screening part of Liability. Records must be Adequate as well.

Page 3-C

ON 2 JUNE 2003, Plaintiff WAS convicted and sentenced to 156 YRS to the CARE of A.D.O.C state Prison. At plaintiffs sentencing, trial Counsel requested A psychological evaluation by A Board Certified in Clinical Neuropsychology JAMES P. SULLIVAN Ph.D ABPP, performance on the booklet category test (BCT), A measure commonly thought to be sensitive to the Frontal Lobe function, finding impairment. Human Frontal Lobes Are particularly susceptible to brain injury AND Are integral in most higher order cognitive functions, including problem solving, goal setting, and impulse control. It was Also determined, through psychological investigation, Plaintiff experienced A very tramatic childhood as measured by any competent objective standard. Plaintiff was born two months premature, abused by his father and Abandonment of his mother, then Abused by the relatives who were forced to take care of him, on A daily basis through-out his childhood plaintiff was subject to routine psysical and emotional Abuse, such as beating with horsewhips, verbal degradation and Isolated. Plaintiff has A visual scar on top of his head. Plaintiffs verbal I.Q score was an 84, placing him in the low average range, Further supporting that plaintiff has some limitations to his cognitive functioning. Moreover, All supporting documentation As to plaintiff' education shows that he had very poor grades, throughout grade school and only completed the eighth grade. ON 5 April 2003, Plaintiff, while At the county jail was placed in A suicide watch after stating he had "Nothing to Live for".

Defendants Are required by Law to perform AN Assessment and identify inmates who meet the designed criteria for placement of Disabled inmates At reception Center processing of Inmates: Initial Assigment. A disability recognized by Americans with Disabilities Act under 42 U.S.C §§ 12101-12213 is defined. A physical or mental impairment that substantially Limits one or more major Life Activities, A record of such an impairment or being reported As having such an impairment. The purpose of D.O. 108 Policy and Procedure; Americans with Disabilities Act, Inmates Are provided Barrier. Free Access to facilities services, programs and Activities including extra-curricular Activities that Are not mandatory but related to the Job function consistent with reasonable Accommodation and security requirements. Procedures ensuring that request for reasonable

Page 3-D

Accommodation Are Appropriately responded to and documented.

On 25 July 2003, The initial Classification Officer relied on previous institutional scores to classify plaintiff, Thus Mental health scores were outdated and indicated a score of a one (Lowest priority) Defendants have started by demonstrating a "Deliberate Indifference" to Plaintiffs mental health that would prove to be extremely Detrimental, Later on in Plaintiff's ~~life~~ Life. If proper screenings were conducted According to its own policy procedure and customs, Plaintiff would have had the benefit of Mental health program services. Still Defendants continue to show "Deliberate Indifference" by denying plaintiff Adequate Mental health services and by showing discrimination to plaintiff's entitlements at its Intake process. At plaintiff's initial classification hearing he adamently disagreed with his placement at an "exclusively cruel and unusual punishment facility". Although he attempted to Grievance his placement at VCU. He was advised that placement is not a Grievable issue. per Policy prisoners at not entitled to Due process claims concerning placement. Plaintiff was then placed in VCU at smu-I based on "I/m has several class 2 Felonies considered to be violent. I/m scores Based on Information contained in PSI and previous institutional score A request for a F/O/R based on Conviction of taking Correctional Officer hostage with weapon and Assault on Corrections Officer and police Officers prior to incarceration a O/R was granted Based on serious Nature of Attempted escape from Pima County Jail, use of weapon"

Plaintiff is not asserting he has a particular right to classification. Plaintiff is asserting that Mentally ill prisoners are entitled to Adequate Medical care. Estelle V. Gamble 429 U.S. 97,103 (1976), And when defendants deny Adequate screening i.e. during intake they denied Plaintiff Due process requirements promised by Americans with Disabilities Act of 1990, Titles I-V; 28 CFR Part 35,130 et. seq., Nondiscrimination on the Basis of Disability by State And local Government services

In A §§ 1983 Civil Action the Arizona Statute of Limitations for personal Injury is two years from time of discovery. Courts must also apply Any state rule for tolling to actions brought under § 1983. Plaintiff is of unsound mind, But Also Plaintiffs claims Are He was subject to "A declining of mental health, Plaintiff had no real knowledge

Page 3-E

that the Cruel and unusual punishment from the past would contribute to Plaintiff` Decline in Mental function

The conditions of Confinement beggin in 2003 and have exacerbated to the level of an atypical and significant hardship in relation to the ordinary incident of Prison Life today. One can't put a specific time As to when Plaintiff` Mental health deteriorated due to Defendant's Deliberate Indifference to house Mentally ill prisoners with pre-existing Psychological symptom Amongst the extreme Psychiatric prisoners. Plaintiff has provided A synopsis on how it began.

In 2003, Defendant` placed plaintiff in V.C.U as punishment, because V.C.U was a unit that Housed the most violent, disruption Mentally ill prisoners, As a result of Plaintiff crime sentence, and conviction. Which also raises the intent of Double-Punishment (5TH Amendment) While housed in VC.U plaintiff` pre-existing Mental health issue's began to exacerbate. The maturity of detainee's in VCU suffered from extreme psychiatric behavior; Constant Loud noise's of extremely psychotic prisoners created a toxic environment to plaintiff` Mental health today, which makes it very difficult to sleep because of the nightmares, and cold sweats. Upon my Arrival to Arizona SuperMaximum facility I was placed onto a gurney, stripped, searched, while four correctional officers huminated me, Advising me that since I enjoyed taking their officer's hostage they'd make my life A living Hell" I was placed in extra tight handcuffs with an additional dog chain that offered the officers a object to manipulate, each time they pulled it the handcuffs ripped into my skin. I was pushed face down onto the gurney and was advised if I looked even sideways or moved even just a slight bit, I'd be pepper-sprayed, tazed, and neutralized by the police K-9. I was placed into 1-B-2 23½ Hour A day Solitary Confinement, officers would often deny me my lunch, showers and recreation. We were only allowed to have (1) book and some Hygiene, writing material. Once I began filing grievances and complaints to my trial Attorney these materials were eventually taken from my cell when I'd go to visit. On one occasion my lunch sack was food poisoned, I was taken to medical Because for Approx. 2 days I could not stand, sleep, eat, or drink water. I spoke to sgt.

Page 3-F

Vasquez About the treatment I was receiving and why I was being subject to this type of behavior, I advised him that this place had to have been Unconstitutional. I inquired about VCU Department policies, and procedures But none existed. I was advised if I wanted out, I've have to submit a I/m Letter to LT. O'Reer. My depression began to become manic, But I did not know how far I was deteriorating. We were not Allowed Hair clippers and fingerNail clippers, cleaning supplies, or mirror etc. The banging on cell doors, constant light, freezing temperatures, Water-floods containing feces became a ordinary part of prison life, causing Anxity and P.T.S.D. I would often witness physical abuse by prison guards, who provoked the susceptable minded, By kicking there plexiglass to wakem up After a All night Yelling & Banging spree, or refusing them meals. The assaults were mostly provoked by guards, Giving them A excuse to beat, taze, and Dog extractions. Plaintiff was evenually moved to Another Pod in SMU-I, still confined to the same treatment, Although we Allowed A T.V. and Radio. I would often have to fall asleep with my ear plugs on, extra loud to drown out the Noises of my neighbor who was a Full blown Schizophrenic. In 2004, Plaintiff was transferred to Central Unit, the Loud noises and banging became more vivid, Due to the increase numbers of prisoners. Plaintiff began taking heavy dosages of medication just to sleep, But the nightmares and delusions began to increase, the depressions would often cause loneliness and complete isolation, which later turn to fear and social phobia. I started losing a lot of weight, becoming uninterest in Ordinary prison life. I repeatedly spoke to medical and advised them of my concerns, But I was simply put on more stronger medication, that would help me sleep all day. Plaintiff was allowed the opportunity to reduce his custody Level in March 2007 till June 2007. Plaintiff was ultimately given Four major tickets for A single incident where staff alleged that plaintiff threaten him, Plaintiff' Institutional score went sky high Back up to Maximum Custody and was sent Back to the same revolving door. While Plaintiff was housed in close Custody he requested transition programs, i.e. Mental health treatment but they were unAvailable due to my transfer. A correct-ional officer witness who was present during the Alleged threating incident indicated

Page 3- (c)

to another prisoner that plaintiff has mental health problems and spoke about the fact that plaintiff shouldn't have had the opportunity to be on a open yard without handcuffs, Due to fact he took a Correctional officer hostage and tried to escape. The prisoner and C.O (witness), then advised the shift sgt. that plaintiff was initially provoked by the reporting officer" who advised the plaintiff, he'd be sure that by the end of the day, plaintiff would be back in maximum custody". Plaintiff remains in Long-term solitary confinement restricted to all the" minimal civilized measure of Life's (ordinary) basic necessities". Plaintiff will rely on the reviewing court to draw on its judicial experience and common sense to gain a context of the long-term effects on, Long-term solitary confinement.

In such cases, courts have held that liability can be premised on a showing of repeated examples of negligent acts which disclose a pattern of conduct. or by showing systemic or gross deficiencies in staffing, facilities, equipment or procedures. Each institution must employ or have available an adequate number of appropriately trained staff to provide needed treatment. Defendants have shown "Deliberate Indifference", if there are inadequate number of staff or if the staff is unqualified there may be grounds not only for injunctive relief seeking additional staff or training and a flaw in medical records system to assure complete and accurate records of the medical needs and treatment for each inmate. A doctor cannot effectively determine the medical needs of the inmate without a medical history. Medical and mental health information deserves a high degree of protection; Disclosure of this information at sentencing however, is in the interest of the prisoner in order to send him to the proper facility. Defendants have demonstrated "Deliberate Indifference" to ensure the plaintiff' requirements authorized by Law and its own policy D.O. 1103.10 to provide special management treatment and; D.O. 1103.06 management of licensed mental health facilities which has procedures and standards that shall ensure the licensed mental health facilities are provided with security, food service, maintance, and all other systems and services attendent to the operation of a prison, pursuant to ADA. Plaintiff is entitled to equal opportunity to programs and sevices under state and federal Law. Plaintiff has written numerous kites, HNR's, personal

Page 3- H

Letters to attorneys, Legislation, Director, FHA coordinator, Grievances, Repeatedly requesting Mental health help and reform But has been deprived ~~this~~ Adequate Mental health services At all Levels.

Indeed, Defendant' have accumulated enough serious mental pain on plaintiff to cross into the realm of psychological torture. Under this regime severely mentally ill prisoners Are subject to serious Amounts of sensory deprivation. The convention Against torture and other cruel, Inhuman or degrading treatment or punishment was Ratified by the United States and is thus part of the supreme law of the land. Congress implemented U.S. Obligations under this treaty by enacting the torture statute, which provides 20 years, Life in prison or even the death penalty if death results from torture committed by a U.S. Citizen. The USA Patriot Act added the crime of conspiracy to commit torture to the torture statute. The convention Against torture prohibits the Intentional infliction of severe physical or mental pain or suffering on a person to (A) obtain a Confession, (B) Punish him or (C) Intimidate or coerce him based on discrimination of any kind.

The combination of inadequate Mental health services and inadequate food services have caused A Adverse health Affect to plaintiff' Health and safety. Plaintiff has demonstrated sharp weight loss, somatic, depression, psycho-logical pain and suffering. Futhermore, plaintiff was recently provided a medical postassium Choride, due to his deteriorating condition. Defendants have recklessly failed to carry out its statutory obligation to establish Appropriate services and programs to ensure it does not present an immediate danger to the health and well-being of plaintiff. Defendants Are required to serve food that is nutricious and prepared under clean conditions. Defendants Are susceptible to keep plaintiff on indefinate Restrictive diet, Despite his declining physical, emotional and Mental health. The eight Amendment protects against conditions that pose An unreasonable risk of future harm, as well as those that Are currently causing harm.

## COUNT II

1.  State the constitutional or other federal civil right that was violated:

8TH Amendment of the U.S. Constitution "Cruel and Unusual Punishment"

2.  **Count II.** Identify the issue involved.  Check **only one**.  State additional issues in separate counts.

☐ Basic necessities    ☐ Mail    ☐ Access to the court    ☒ Medical care
☐ Disciplinary proceedings    ☐ Property    ☐ Exercise of religion    ☐ Retaliation
☐ Excessive force by an officer    ☐ Threat to safety    ☐ Other: _____

3.  **Supporting Facts.**  State as briefly as possible the FACTS supporting Count II.  Describe exactly what **each Defendant** did or did not do that violated your rights.  State the facts clearly in your own words without citing legal authority or arguments.

In general, prisons are not required to provide counseling services Like drug or Alcohol rehabilitation to prisoners unless they are juveniles, mentally ill, or received rehabilitive services as part of their sentence. Women prisoners of District of Columbia Dept of Correct- ions v. District of Columbia, 93 F.3d 910, 927. (D.C) Cir. 1996) plaintiff is asserting he is mentally ill, and Defendants have shown deliberate Indifference By Denying the mentally ill class, Adequate mental health services, causing extreme psychological pain and in some cases Death when Defendants deprive plaintiff the minimal civilized measure of Lifes necessities e.g. Adequate medical services - Defendant subject that prisoner to the wanton and unnecessary infliction of pain. Long term Isolation exacerbates ones psychological state when prison Conditions fall below broad and idealistic concepts of dignity Civilized standards, Humanity and decency. Inhumane prison condition often are the result of cumulative actions and inactions by numerous officials inside and outside a prison, sometimes over a long period of time while the Constitution does not mandate Comfortable prisons neither does it permit inhumane ones. the eighth Amendment takes its meaning from the evolving standards of decency that mark the progress of a maturing society

4.  **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

Declining Psychological and Physical Injury

5.  **Administrative Remedies.**
    a.  Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?    ☒ Yes   ☐ No
    b.  Did you submit a request for administrative relief on Count II?    ☒ Yes   ☐ No
    c.  Did you appeal your request for relief on Count II to the highest level?    ☒ Yes   ☐ No
    d.  If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

4

## COUNT III

1. State the constitutional or other federal civil right that was violated: _8th Amendment of the U.S Constitution Cruel & Unusual Punishment_

2. **Count III.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☒ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count III. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   _The Constitution guarntees Prisoners Adequate Medical services and prisons are entitled to services funding to treat the mentally ill. Defendants have shown Retaliation against plaintiff by Denying him these rights Because of the charges that he had Already been convicted of while Awaiting sentence in the Pima County Jail_

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   _Declining Psychological and Physical Injury_

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes ☐ No
   b. Did you submit a request for administrative relief on Count III? ☐ Yes ☒ No
   c. Did you appeal your request for relief on Count III to the highest level? ☐ Yes ☒ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _Not A Grievable issue "Unprocess"_

**If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.**

page 6 A                    Count IIII

① State the constitutional or other federal civil right that was violated.
5TH Amendment : Nor shall any person be subject for the same
offense to be twice put in jeopardy of life or limb.

② Retaliation

③. Defendants have denied plaintiff adequate mental health placement, upon his
initial intake into Defendants custody, Thus, Denied him Access to the courts
when plaintiff Attempted to exhaust his grievance remedies regarding his
Conditions of Confinement in VCU as Cruel and Unusual Punishment.
This court seems to imply that plaintiff has no constitutional right to a particular
classification, regardless how unconstitutional that placement is, yet plaintiff
Asserts that Defendants acted with a malice intent when imposing Atypical and
significant hardship in the relation to the ordinary incidents of prison life. This VCU
Unit was shut down and deemed unconstitutional to [Ordinary incidents of prison
Life] Cruel and Unusual punishment because the conditions of Confinement posed on plaintiff
and other prisoners were severely torturous. Plaintiff was held in total despair for
four months and the degree of restraint were imposed [not for a disciplinary
sanction] but for the charges that I was convicted of. Questions concerning treatment
by prison officials in well documented in this complaint. Plaintiff was subject to torture,
Declining psysical, emotional, mental health pain; food posioning etc. etc. Plaintiff
was sentenced to Life in prison and these nightmarish memories will forever
effect my sanity, they had that psychological effect on me. One can easily
Assume VCU A punitive unit, held inside SMU-I is for punishment
purposes. I was not placed initially in A NON-punitive SMU-I unit for
my Classification, I was placed in a punitive unit directly from the Alham-
bra reception center, where I spent (3) hours directly from the county jail
in Tucson

4 Injury
        Declining psychological, emotional and physical Injury.

page ████ 6B

5. Administrative

A  Yes

b. Yes

C. NO

D  Not a Grievable issue "unprocessed"

page 7-A                     COUNT I

1. State the CONSTITUTIONAL OR other federal civil right that was violated
First Amendment: Under the 1st Amendment plaintiff has the right to "petition
the government for a redress of grievances."

2. Access to the court

3. Plaintiff initially arrived into ADOC and was maliciously placed in A Atypical &
significant burdensome confinement with Double-punishment AS AN INTENT IN July 2003 Defendant
Schriro subject plaintiff to severe hardship & punishment. Because of the crime I was convicted
Defendant had fabricated A tortuous unit called VCU basically without rules or regulations. The plaintiff
was never provided A legitimate reason as to why he was initially placed in these particular harshest
of punitive regimens that posed A typical and significant hardship on plaintiff. Plaintiff attempted
to try to grieve the conditions But was denied Access to the courts when I attempted to exhaust
all administrative remedies pursuant to Prison Litigation Reform Act (PLRA). In this courts order dated
26 JAN 2011 Plaintiff claim was dismissed as time-barred (Statute of Limitations). I was advised
that placement was NOT A grievable issue therefore, my grievance was returned "Unprocessed"
I was advised that I could not grieve A unprocessed grievance. As this court is fully aware
before a prisoner files a civil rights complaint he must try to resolve his complaint through the
prisons grievance procedure. As a custom, if we do not follow this procedure our claim will be
dismissed. Defendant's activily maintain that plaintiff can not grieve placement and may not proceed
this requirement if grievance is returned Unprocess. Under Lewis V. Casey 518 U.S 343 (1996),
held that prisoners have to show AN Actual injury and the existence of a "NON-frivolous
legal claim" to win AN Access to the courts case. The Actual injury requirement in Lewis V.
Casey Also Applies if you are seeking damages for a past injury. In another Supreme
court case, Christopher V. Harbury, 536 U.S 403 (2002) A woman who wasn't a prisoner
claimed that she had been denied Access to the court because the U.S. government had withheld
information from her about her husbands torture by Guatemalan military officers in
the pay of the CIA. The court dismissed her claim because she still had a way to get
Damages The court explained that to get damages for a past denial of court

page ~~7.B~~ 7.B

Access the plaintiff must identify A remedy that is presently unavailable e.g.
this courts order dated 26 JAN 2011.

    ④. INjury

        Declining psychological, emotional and physical injury.

⑤ Administrative Remedies

A. Yes

b. Yes

C. NO

D. Not A Grievable issue "unprocessed"

## E. REQUEST FOR RELIEF

State the relief you are seeking:

Wherefore plaintiff respectfully prays that this court enter Judgement granting plaintiffs (1) A Declaration that the Acts and omissions described herein violated plaintiffs rights under the US Constitution and Laws of the United States. (2) A preliminary and permanent injunction ordering defendant Charles L. Ryan et al.; to stipulate and enforce the plaintiff' mentioned Resolution plan and further changes that would improve the mental health prisoner's should not have to endure extra torture or punishment, due to their illness Lack of qualified staff screening or malious treatment by ADOC. This.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___3·11·2011___

DATE                                         SIGNATURE OF PLAINTIFF

_____
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

_____
(Signature of attorney, if any)

_____
_____
_____
(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If you need more space, you may attach no more than fifteen additional pages. But the form must be completely filled in to the extent applicable. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.

page 6-A                          E. Request for Relief

Injunction would improve prison conditions and will prevent
AIDOC from violating prisoners rights in the future. This is
not a isolated incident, unfortunately most prisoners
including myself are not of sound mind to litigate
these complaints adequately in a federal court
without a Experienced Lawyer. Most prisoners can't
even read or spell to therefore exhaust the prison
Grievance system, pursuant to PLRA

③ Compensatory damages in the amount of $60,000,000.00
against each defendant, jointly and severally.

④ Punitive damages in the amount of $60,000,000.00 against
each defendant

⑤ A jury trial on all issues triable by jury

⑥ Plaintiff's cost in the suit

⑦ Any additional relief this court deems just, proper and
equitable

1.                     Verification
        I have read the foregoing complaint and hereby verify that the
matters alleged therein are true except as to matters alleged on
Information and belief, and as to those, I believe them to be true. I
certify under penalty of perjury that the foregoing is true & correct

Executed on        3·11·2011
                   Date                                      signature of Plaintiff

Page 6-B            E. Request for Relief
                A. Stipulations for Relief

1. Make segregation a last resort and a more productive form of confinement, and stop releasing people directly from segregation to the streets. Tighten admissions criteria and safely transition people out of segregation as soon as possible. And go further. to the extent that safely allows, give prisoners in segregation opportunities to fully engage in treatment work study, and other productive activities and to feel part of a community.

2. End conditions of isolation. Ensure that segregated prisoners have regular and meaningful human contact and are free from extreme physical conditions that cause lasting harm.

3. Protect mentally ill prisoners. Prisoners with a mental illness that would make them particularly vulnerable to conditions in segregation must be housed in secure therapeutic units. Facilities need rigorous screening and assessment tools to ensure the proper treatment of prisoners who are both mentally ill and difficult to control.

4. To provide universal and improved mental health screening for all prisoners when they are first admitted to prison;

5. To provide prisoners with serious mental illness confined in SHU a minimum of two hours per day of out of cell treatment and/or programming, in addition to an hour of recreation, and for prisoners who will be housed in residential mental health unit, as many as four hours per day out of cell treatment and/or programming, in addition to an hour of recreation;

6. To review the disciplinary sentences of all prisoners with serious mental illness for the purpose of removing these prisoners from SHU and keeplock;

7. To add additional Intermediate care program beds for prisoners with mental illness who cannot tolerate general population units;

8. To create a bed residential mental health unit, which will provide four hours per day of out of cell programming and/or treatment for prisoners with serious mental illness who would otherwise be in SHU.

Page 6-C

9. To provide mental health and suicide prevention assessments upon admission to SHU

10. To limit the use of observation cells, where prisoners in psychiatric crisis are deprived of most possessions and clothing and to improve treatment and conditions for prisoners in such cells;

11. To limit the punishment of prisoners with mental illness who hurt themselves because of their illness.

12. To limit the use of "Restricted diet" as a punishment for maximum custody prisoners with mental illness;

13. To eliminate isolated confinement of prisoners with serious mental illness in cells that have solid steel doors that severely isolate and restrict communication; and;

14. To increase mental health services to prisoner in keeplock confinement.

The settlements provisions for the review of disciplinary sentences of prisoners with serious mental illness include the following:

15. A one time review of all previously imposed SHU time: In order to address the historical accumulation of large SHU sentences and meet the goal of reducting the time prisoners with mental illness are held in restrictie environments, the settlement requires that all prisoners with serious mental illness have their SHU sentences reviewed by central office-staff (FHA and ADOC personnel appointed by the commissioners) for diversion from SHU and for SHU time cuts. This review ~~XXXXXXXXXXXXXX~~ must be completed within one year.

16. Automatic review of new SHU sentences: All disciplinary determinations in which mental health was at issue in the disciplinary hearing will, from this point forward be automatically reviewed by the superintendent and FHA if a prisoner receives a SHU sanction of greater than 60 days or an accumulation of 120 days or longer of SHU or keeplock confinement.

17. Time Cuts: At lease once every 3 months prisoners on the FHA caseload will have their SHU time reviewed for possible time cuts by a Case Management Committee

Page 6-D

(CMC) composed of ADOC and FHA staff.

18. Central office review Committee: Central office staff at ADOC and FHA designated by the commissioners will be on this committee, which will provide oversight to the settlement Agreement and review the Aggregation of SHU confinement sanction for prisoners on the FHA (MH) caseload on a prison by prison basis.

19. Reviews of SHU confinement: Prisoners with serious mental illness that are in SHU will have their housing reviewed at least every 90 days to determine if confinement in SHU is consistent with both Mental health treatment and safety and security Requirement. The settlement Agreement commits ADOC AND FHA to moving these prisoner from more restrictive to less Restrictive environments and significantly reducing the time that prisoners with serious mental illness Are housed in restrictive environments when safely and security permit.

20. Refusals of treatment or medication: Misbehavior Report will not be issued solely for A prisoners Refusal to accept medication or treatment.

21. Limits on Restricted Diet: There will be Limits on use of the Restricted diet for prisoners where mental health is at issue in a disciplinary hearing for these prisoners, the restricted diet may only be used as a sanction for safely and security Reasons. The Restricted diet will not be imposed solely as punishment for this group of prisoners who are disruptive and who have lost All other AVAilable privileges and good time.

21. SHU mental health Assessment and Suicide prevention screening. These will take place within one day of Admission into SHU.