Robert C Gamez #131401
Name and Prisoner/Booking Number

A.S.P.C Florence Central Unit
Place of Confinement

PO Box 8200
Mailing Address

Florence, AZ 85132
City, State, Zip Code

(Failure to notify the Court of your change of address may result in dismissal of this action.)

FILED _____ LODGED
RECEIVED _____ COPY

JUL 28 2011

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ S _____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Robert Carrasco Gamez JR.
(Full Name of Plaintiff)              Plaintiff,

vs.

(1) DORA B. Schriro (Former Director)
(Full Name of Defendant)

(2) Dr Sherry Goldsmith

(3) Charles L. Ryan

(4) Dr. Dennis Kendall

Defendant(s).

☒ Check if there are additional Defendants and attach page 1-A listing them.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. CV 10-2070-PHX-JWS-MEA
(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT
BY A PRISONER**

☐ Original Complaint
☐ First Amended Complaint
☒ Second Amended Complaint

## A. JURISDICTION & Venue

1.  This Court has jurisdiction over this action pursuant to:
    ☒ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
    ☐ 28 U.S.C. § 1331; Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).
    ☐ Other: _____

2.  Institution/city where violation occurred: A.S.P.C Central Unit, Florence, Ariz.

Revised 3/9/07                                    1

**550/555**

## B. DEFENDANTS

1. Name of first Defendant: __Dora B. Schriro__ . The first Defendant is employed as: __Former Director__ at __ASPC Florence__ .
   (Position and Title)                                    (Institution)

2. Name of second Defendant: __Dr. Sherry Goldsmith__ . The second Defendant is employed as: __Former Facility health Administrator__ at __A.S.P.C Florence__ .
   (Position and Title)                                    (Institution)

3. Name of third Defendant: __Charles L Ryan__ . The third Defendant is employed as: __Director__ at __A.S.P.C Florence__ .
   (Position and Title)                                    (Institution)

4. Name of fourth Defendant: __Dr. Dennis Kendall__ . The fourth Defendant is employed as: __Facility health Administrator__ at __A.S.P.C Florence__ .
   (Position and Title)                                    (Institution)

If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?   ☒ Yes      ☐ No

2. If yes, how many lawsuits have you filed? __4__   Describe the previous lawsuits:

   a. First prior lawsuit:
      1. Parties: __Gomez__ v. __Ryan et al__
      2. Court and case number: __District Court of Arizona : 2:10-CV-01743PHX JWS  MEA__
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) __pending__

   b. Second prior lawsuit:
      1. Parties: __Gomez__ v. __Ryan et al__
      2. Court and case number: __District Court of Arizona 2:10-CV-2663 PHX JWS MEA__
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) __pending__

   c. Third prior lawsuit:
      1. Parties: __Gomez__ v. __Ryan et al.__
      2. Court and case number: __District Court of Arizona 2:10-CV-2789 PHX JWS MEA__
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) __Dismissed for Failure to state A Claim__

If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.

page 2-B                 B. Defendants

Each Defendant is sued individualle and in [His or Her] official capacity. At all times mentioned in this complaint each defendant acted under the color of state Law

5. Name of Fifth Defendant   John Doe. The Fifth Defendant is employeed as Correctional Officer   At A.S.P.C- Eymen Complex.

## D. CAUSE OF ACTION

### COUNT I

1.   State the constitutional or other federal civil right that was violated: 8TH Amendment
Cruel & Unusual Punishment

2.   **Count I.** Identify the issue involved.  Check **only one.**  State additional issues in separate counts.
- ☐ Basic necessities        ☐ Mail              ☐ Access to the court        ☒ Medical care
- ☐ Disciplinary proceedings  ☐ Property         ☐ Exercise of religion        ☐ Retaliation
- ☐ Excessive force by an officer  ☐ Threat to safety  ☐ Other: _____

3.   **Supporting Facts.**  State as briefly as possible the FACTS supporting Count I.  Describe exactly what **each Defendant** did or did not do that violated your rights.  State the facts clearly in your own words without citing legal authority or arguments.

At all times Mentioned Defendant Schriro, Goldsmith, Ryan, and Kendall John Doe (Employees) at the Arizona Department of Corrections) Acting under color of State Law have Violated plaintiffs Rights guaranteed by the United States Constitution And federal Law

As A consequence of their own Actions, prisoners maybe deprived of Rights that Are Fundamental to Liberty. Yet the Law and the Constitution demand Recognition of Certain other Rights Prisoners Retain the essence of Human dignity inherent in all persons. Respect for that dignity Animates the eighth Amendment prohibition against cruel and unusual punishment. The basic concept underlying the eighth Amendment is nothing less than the dignity of man'" Atkins v. Virginia 536 U.S. 304, 311 (2002; quoting Trop v. Dulles 356 U.S. 86, 100 (1958) (Plurality Opinion)

To state A claim for A Constitution Violation Regarding Medical Care, A plaintiff must Allege Facts to support that he has or had A serious medical need And that A particular defendant Acted with deliberate Indifference to that need see Estelle V. Gamble 429 U.S. 97, 104-05 (1976). If A prison deprives prisoners of basic

4.   **Injury.**  State how you were injured by the actions or inactions of the Defendant(s).
PHYSICAL, Mental and Emotional Distress / PAIN

5.   **Administrative Remedies:**
   a.   Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?   ☒ Yes   ☐ No
   b.   Did you submit a request for administrative relief on Count I?   ☒ Yes   ☐ No
   c.   Did you appeal your request for relief on Count I to the highest level?   ☒ Yes   ☐ No
   d.   If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

Page 3-A                    Course of Action

sustenance, including adequate medical care, the court have a responsibility to remedy the resulting Eighth Amendment violation see Hutto V. Finney 437 U.S. 678, 687 N.9 A psychiatric or Mental illness can constitute a serious medical need. see Carnell V. Grimm 74 F.3 977, 979-80 (9TH Cir. 1996); United States V. Kidder 869 F.2d 1328, 1330 (9TH Cir 1989); Some example of actionable harm from inadequate Medical care include: A failure to inquire into facts Necessary to make a professional Judgement. A failure to perform adequate health screening on intake. Inmates of Occoquan V. Berry 717 F.Supp. 854 (D.DC 1989)

        In 1989, plaintiff was attending Amelia M. Maldonado Elementary School in Tucson, Arizona. During that time, the Ameritec environmental performed investigative and site/area surveillance for the reported health affected Teachers, staff and area residents. The majority of these individuals reported upper respiratory disfunction. Many reported acute lesions, bronchitis or industrial asthma disorders. Site investigation of this immediate area revealed conclusive evidence documented by the Ameritec Laboratories in scottsdale that Large amounts of Sodium Hypochlorite were present in extreme quantities of the soil. The chemical was un reacted and pose an immediate health risk to the area residents if hydrated by rain or surface water runoff. Chain of Custody samples were selected for analysis, however chlorine/bleach aromatic vapors are volatilizing at a rapid rate in the area. Two soil samples were collected by steve Maupin on June 10, 1989. Samples were tested and revealed the presence of Sodium Hypochlorite (NaOCL). This subst- ance in the un-reacted state, can if reacted by hydration produce highly toxic chemical gas species such as: chlorine Gas, chlorine Dioxide, chloracetyl chibride; Phosgene or "Mustard Gas". Agitation and Anxiety are common results of severe chlorine expos- ure. Moreover, the school was build with "Tight-Air Syndrome", inoperable primers. The afflictions are consistent with toxic poisoning from sewer gases, chlorine used to Flush defective sewers in the neighborhood, hydrogen sulfide, methane and possibly other sewer gases and lead poisoning from the use of 50-50

page 3-B

Lead solder on the joints of copper pipes which violates current safely standards which requires 95-5 Lead soldering connections. There is Also a possibility that the poisoning was compounded by building the school on an area where many neighbors related the existence of toxic chemicals being dumped or buried on the site. The Ameritec Environmental services, Inc. experimental Laboratory have already tested the solder and confirmed that it does not meet specifications and emits toxic Lead into the pipe system. On 7-21-2011 Plaintiff cited the above mention to psychologist Newmen in support of his requested neuropsychological evaluation

Plaintiff was imprisoned from 1997 till 2000. On 21 oct 1997 plaintiff underwent a psychological evaluation at the Phoenix Reception Center psychopathology acute symptoms or problems with the regard of some suggestions for intervention by a Jeffrey Woolley Psychology Associate II Professional were concluded. At the time of this evaluation defendants relied on Mental Health consideration from psychometric Data which also provides the following:

"The reader is reminded that the findings reported here are probability estimates based exclusively on psychometric data. They are thus, in most cases, better predictors of outcome than expert judgement but they may err seriously due to inability to consider individual circumstances. The ultimate Mental health diagnoses and deasons are by law, the designated function of properly trained licensed psychologist or psychiatrists"

Plaintiff was re-arrested and convicted for new crimes in 2002. While plaintiff was preparing for sentencing his trial attorney requested an evaluation by a board-certified clinical neuro-psychologist to assess whether plaintiff had Ariz. R. Crim. P. Rule 11 issue. An initial neuropsychologist evaluation was done in this case by a Dr. James Sullivan which found that there appeared to be possible impairment to that portion of the brain that affects, inter alix problem solving and Impulse Contesl. After Learning of Dr. Sullivans

page 3-C

initial findings, plaintiff refused to complete the evaluation. Evenmore so, Plaintiff had processed defense Counsel and psychologist into his paranoid delusions that the Tucson Police Department, Judge and prosecution, were all part of a conspiracy to frame plaintiff.

Deliberate Indifference "may occur if Prison Officials deny, delay or interfere with Medical treatment" Hutchinson V. United States, 838 F.2d 390, 394 (9th Cir. 1988); A prison's failure to provide sustenance for inmates "May actually produce physical" torture or a Lingering death." Estelle V. Gamble 429 US 97, 103 (1976) (quoting In re Kemmler, 136 U.S. 436, 447 1890); Screening of prisoners for psychiatric problems is required. Arnold on behalf of H.B V. Lewis 803 F.Supp.2d 46, 253 (D. Ariz. 1992). Lack of screening part of Liability. Records must be adequate as well. Defs mental health staff are managing far Larger caseloads than is appropriate or effective. Furthermore, Arizona Revised Statues ensures A.R.S §§ 31-132 Duty of County sheriff's office to Deliver Medical Records/Information to Receiving units. Defs are required to perform Assessments every (30) days on Prisoners with Mental health illnesses

On 1 July 2003, Plaintiff arrived at ADC's Alhambra Reception Center where he was held for approx. (3) Hours. Plaintiff asserts Defendant Former ADC Director Dora B. Schriro; and Former Facility Health Administrator (FHA) Dr. Sherry Goldsmith acted with "Deliberate Indifference" by not providing plaintiff adequate screening, Medical services and associated it with Malice by immediately classifying plaintiff to the Violence Control Unit (VCU), without first consulting with experts or a board certified psychiatrists about how the cruel and unusual punishment prisoners with pre-existing Mental and Medical health would later become afflicted. Prisoners who are not sick or mentally ill do not yet have a claim that they have been subjected to care that violates the eighth Amendment, but in NO sense are they remote bystanders in Arizona's medical care system. They are that system's next potential victims.

page 3-D

ON 2 July 2003 Defendant John Doe immediately placed plaintiff on a "Lunch Sack only diet" without Justification. Def. Schriro had Incorporated a practice into the Arizona Prison System, that if prisoners withheld there treys as a form of protest to improve their Conditions of Confinement prisoners would then be placed on a "Lunch Sack only diet" to avoid further problems concerning prisoners holding their treys. Plaintiff had not engaged in any type of conduct while at ADC to justify him being deprived regular meals. This was plaintiff' initial days in the custody of ADC. Plaintiff subsequently became seriously ill, throwing up intense stomach ache, dizzness, unable to stand, sleep and diarrehea from consuming the lunch meat. Soon other prisoners in VCU began banging for medical staff due to "a man-Down situation" because plaintiff was food poisoned. Plaintiff was then escorted to medical by staff who was always less entused about plaintiffs Health & Safety. Def. Goldsmith advised plaintiff that nothing was wrong with him, Plaintiff was then placed in a holding enclosure Plaintiff laid on a restroom floor for approx (2) hours in his own throw-up, and urine. Despite plaintiffs request to be treated because of the serious pain he was in Def. Goldsmith acted with a Deliberate Indifference to plaintiffs serious health need by not treating him, and not initiating an investigation about the alleged food poisoning.

ON 25 July 2003, the initial Classification officer [a non-Qualified, properly trained Licenced psychologist or psychiatrist] screened plaintiff on his previous institutional scores. Plaintiff contends that Def. Schriro implemented a practice that constitutes a "Deliberate Indifference" by not providing adequate mental health screening i.e. inadequate records and unqualified trained staff to assess plaintiffs Medical health needs. Qualified trained Health professionals would have immediately Known that the then [current Conditions of Confinement] would cause long term adverse health effects, tending to exacerbate plaintiff contends that he should have been provided classification At the highest possible priority Reflecting his current Mental health and medical conditions. Instead, plaintiff was classified to special

Page 3-E

Management Unit I (SMU-I) and, specifically, the Violence Control Unit (VCU) based on his record of several class II felony convictions, including taking an officer hostage with a weapon, assault of officers prior to recidivism, and/or attempted escape from Pima County Jail. Plaintiff asserts that Def. Schriro caused him to be immediately placed in VCU and that such placement was design to inflict Intentional pain and suffering for his crimes that he was already punished for. Plaintiff remained in the VCU for four months. During that time, Plaintiff attempted to grieve his placement in VCU, but was told it was Non-grievable. Plaintiff contends that the failure to adequately screen him for mental illness before placing him in VCU violated his civil rights to mental health treatment and exacerbated his pre-existing mental illness. He also contends that the conditions in VCU, especially the constant loud noise by other inmates, made it difficult to sleep, their catatonics and His severe hallu-cinations still makes it difficult to think and exacerbates his mental illness. Plaintiff also cites constant lighting, freezing temperatures (without adequate clothing), sewage flooding, and solitary confinement for 23½ hours a day as additional conditions.

Upon Plaintiff's initial arrival to SMU-I, specifically VCU from ADC's Alhambra Reception Center, he was placed on a gurney and strip-search, while officers told plaintiff they'd make his life a living hell because he had taken an officer hostage. Plaintiff was placed in very tight handcuffs and threatened with pepper spray, tazing, or being neutralized by a police dog if he moved. Officers often denied him lunch, showers, and recreation. Other prisoners less-suitable, the mentally ill who would scream and bang on cell doors were also frequently deprived meals. Officers would then give their meals to other sycophant inmates. Plaintiff would hear officers gather at 0600 every morning and chant "Go VCU." Plaintiff was allowed only one book and limited hygiene and writing material. Plaintiff was not allowed to have hair or fingernail clippers, cleaning supplies, or a mirror. When Plaintiff asked Sergent Vasquez about his treatment and the constitutionally of VCU, he was told that he had to submit a I/m letter to Lieutenant O'Reer.

Page 3- F

plaintiff suffered from insomina, depression, anxity attacks, broncial asthma, memory loss, food poison (INTER Alia like P.T.S.D). Plaintiff often saw Atlease (3) times a day, officer's provoke mentally ill by for example, kicking the plexiglass on their cell doors following episodes in which the inmate's had made noise all night, denial of meals, beatings, tazings, or the use of dogs to extract inmates from their cells. On one occasion while plaintiff was At medical, the engineer behind these repressive conditions (L.T. O'Keef) had repeatedly abused his discretion by Allowing plaintiff to watch, while he unleashed a K-9 on Another prisoner. At some point, plaintiff was moved to another pod in SMU-I, where he was allowed to obtain some liberty privileges i.e. A T.V and Radio, A sweater, sweats, some books.

On 16 October 2003, Plaintiff submitted A Health Needs request due to his difficulties breathing, Bronchial Asthma, Anixty Attacks and Allergies. The Ventilation in VCU was extremely hindered by the plexiglass, creating a suffocating enviroment, Def Goldsmith failed to Adequately treat plaintiffs medical condition by denying him adequate treatment dispite his request for medical care. Had Defs Schried and Goldsmith implemented policies and precedures designed to "help rather than Harm" they would have prevented needlessness deaths and suffering of many including plaintiff e.g. Shared Insanity Syndrome

On 19 Nov. 03, Plaintiff submitted a Health needs request to Def. Goldsmith due to his mental health, greatly causing confusion and Anixty Attacks. Def. Schriro and Goldsmith continue to show a Deliberate Indifference by not providing plaintiff with Adequate mental health services.

On or About November 2003, Def schriro continued to show a Deliberate Indifference by removing plaintiff from VCU 182 and Deliberately placing him in SMU-I 2830 Directly next door to a inmate with a severe Catatonic illness, for Approx (7 months

On or About 20 Sep 2004, Plaintiff was examined by Timothy Bowers

Page 3 - G

And Michael Barbare who determined plaintiff had a low needs Mental health score, dispite plaintiffs repeated complaints of deterioration

On or About April 2005, Def Ryan and Kendall Acted with a Deliberate Indifference by subjecting plaintiff to Unsanity and unsafe Living Conditions thus, plaintiff was dianosed with a infectious illness i.e. Bacteria staph infection causing plaintiff to suffer from bleeding, painful oozing with pus for approx. (6) days without being treated, ultimately leaving a permanent scar on his left hip

On or About 3 May 2007, Plaintiff was dianosed with insomia, depression, Anxity (Inter Alia), Mental health staff proscribed Thorazine and Celexia

On 8 Jan. 2008, Defendant Kendall proscribed plaintiff citalopram for his Mental illness, Defendant Ryan has shown a Deliberate Indifference to house plaintiff in a inadequate facility despite his deteriobration

On 18 Jan 2008, Plaintiff submitted a Health needs Request, increased insomnia, Anxity Attacks, Hypersensitive, OCD, Depression, Delusion, Anti-Social behavior Defs Ryan and Kendall continue to show a "Deliberate Indifference" by housing plaintiff in a inadequate facility.

On 24 Jan 2008, Plaintiff submitted a Health needs Request, increased Catatonic behavior. Def. Ryan has continued to show a "Deliberate Indifference" by housing plaintiff in a inadequate facility dispite his obvious deterioration.

On 21 Feb 2008, Defendant Ryan has determined Plaintiff remain in Maximum Custody through Repetitive and/or seriously disruptive behavior has demonstrated a chronic inability to adjust to a lower custody unit. Defendant Ryan and Kendall have shown a Deliberate Indifference by not Providing plaintiff with adequate treatment in Maximum Custody dispite his continuing deteriorating behavior.

On 8 April 2008, Plaintiff Requested a Nuropsychological evaluation due to his increased memory loss, Lack of oxygen to his brain, Light headedness, dizzness while just standing. Def. Kendall has demonstrated a Deliberate Indifference to

Page 3 - H

Plaintiff's Medical needs by Denying him Adequate treatment.

On 29 June 2009, Plaintiff had requested a fan due to upper respitory breathing difficulties through Def. Kendall, plaintiff request was denied

On 28 July 2009 Def Ryan has determined plaintiff remain in Maximum custody through repetitive and/or seriously disruptive behavior, has demonstrated a chronic inability to adjust to a Lower custody unit. Def. Ryan and Kendall have shown a Deliberate Indifference by not providing plaintiff adequate mental health treatment in Maximum Custody despite his continuous deterioration.

On 29 August 2009, Plaintiff submitted a Health needs request, Increased catatonic. Def's Ryan and kendall have continued to provide plaintiff with adequate Mental health facilities and treatment, despite his obvious deterioration.

On 6 September 2009, Plaintiff attempted to obtain adequate mental health services utilizing the prisoner Grievance system. Def's Ryan and Kendall have demonstrated a "Deliberate Indifference" by failing to provide adequate Mental health services and adequate facilities dispites Plaintiff's deteriorating mental health care, the treatment plaintiff requested i.e. Two hours of out cell treatment or programming daily in addition to one hour of recreation; To have disciplinary sanctions reviewed and modified for all prisoners with serious mental health sickness, the creation of intermediate care program beds for Mental Health prisoners who can't tolerate general population, to have sentences reviewed for possible modification and several other issues. Defendant Ryan and Kendall have shown a "Deliberate indifference" by claiming "This Level does not have the Ability to change policy, to change the issues plaintiff has requested" Absence of timely access to appropriate Levels of care at every point in its system. Furthermore, Mental health psychologist Dr. Holly determined their exists a routine Level of need for mental health treatment

On 17 Sep 2009 Plaintiff submitted a Health needs request to Def. Kendall citing increased deterioration and inadequate Mental health services

Page 3  I.

On 30 Oct 2009, Def's Ryan and Kendall have acted with a Deliberate Indifference by housing plaintiff with a pre-existing mental illness amongst a extreme Catatonic environment and have associated it with a particular malicious and sadistical intent to cause psychological effects to plaintiff mental health. Due to plaintiffs participation in a peaceful Demonstration to improve the conditions of medical Unsanity Conditions (Enter Alia) Plaintiff was then transfered and his television was broken in a Retaliatory Act for his involvement in the peaceful Demonstration. Prisoners have a right to redress their grievance and assemble in peaceful demonstrations that do not pose a risk to a Logical penological interest without having to worry about malicious and sadistical harm.

On 5 Dec. 2009, plaintiff submitted a Health needs request to Def. Kendall citing increased deterioration and experiencing Difficulties Breathing because of the Ventilation in Kasson unit i.e. plexiglass; Depression, insomina, memory loss, Catatonic. Def's Ryan and Kendall have acted with a Deliberate Indifference. by creating toxic, unsafe and unsanitary conditions that hampers effective delivery of Medical and Mental health care.

On or about December 2009, Defendant Ryan acted with a Deliberate Indifference when they moved plaintiff 2814 Kasson Unit, next door to a full blown feces throwing, schizophrenic prisoner to further increase unrest and violence e.g. Shared Insanity Syndrome

On 10 June 2010, Plaintiff attempted to exhaust all Administrative Remedies asserting that as a result of Def. Ryan incorporating Amendments to its already inadequate food services, this creation's a extreme health risk concern because it does not provide adequate nutrient. Furthermore, this practice is intented to provide Def. Ryan with a cost-saving strategy, particularly given the states on-going fiscal problems. Thus, Def. Ryan implemented a practice thats intended to Double the prison population in Level 5 super-maximum Facilities. Evenmore so, capitalizing on the deficiencies in prisoners meals, relaying on a Restrictive Movement theory to solidify this unconstitutional practice. Increased violence requires increased reliance on

Page 3 J

Lockdown to keep order, and Lockdowns further impede the effective delivery of care, which explains half the deficiencies of adequate Mental health services that are not provided to plaintiff

On 22 July 2010, Plaintiff attempted to exhaust all his administrative remedies asserting that Defendant Ryan and Kendell denied plaintiff transitional progressive Eye Glasses. On 1 January 2010 Plaintiff was authorized by a eye doctor to possess progressive eye wear due to the fact plaintiff suffers from severe eye pain when exposed to light on his Left eye, diagnosed by a eye specialist in 2007 and again 2010; Plaintiff was ultimately advised that Def. Kendell had plaintiffs eye-wear but Def Ryan did not approve on them because they somehow posed a risk to security, A new pair [Non-Progressive] would be ordered at a Later date. Def. Kendell has acted with a Deliberate Indifference by denying plaintiff appropriate eye wear that was approved by a specialist twice (2007 & 2010) in the past, causing plaintiff to suffer unnecessary or wanton infliction of pain.

On 27 October 2010, Plaintiff attempted to exhaust all his administrative remedies asserting that Def. Ryan has shown a "Deliberate Indifference" by creating insanity, unsafe and deficienties in there Medical services "primarily because the overcrowding" has overlapped the very limited resources of Arizona state prison, imposes demands well beyond the capacity of Medical and Mental health facilities, creats unsanitary and unsafe conditions that makes progress in the provision of care difficult or impossible to achieve. The overcrowding is the "primary cause of the violation of a federal right" 18 U.S.C § 3626(a)(3)(e)(i), specifically the severe and unlawful mistreatment of plaintiff through grossly inadequate provision of Medical and Mental health care. Def Ryan has shown a Deliberate Indifference by denying plaintiff his due process rights against the eight Amendment cruel and unusual punishment clause. Plaintiff has also cited numerous deficienties e.g. 1. Unnecessary and Excessive force 2. Kangaroo Court disciplinary proceedings 3. Legislation reform 4. Prison Conditions 5. NonFunctional Classification System 6. Rampant Violence 7. Overwhelming 8. Barbaric Segregation Conditions 9. The quantity and training of prison personel 10. The presence of other constitutional violations 11. Noncompliance with the America

Page 3 - K

with disabilities Act. 12. Religious Rights 13. Insufficient Law Library And irregular and Arbitrary access to the court 14. file sanitation Inventory periodic 15. Reduce Arizona's Prison Population 16. Jackets And blankets, clothing (MAX)

On 10 November 2010, Plaintiff wrote a letter to Def. Ryan requesting to be moved to a Appropriate facility due to his mental health issues. Def. Ryan continues to show a Deliberate Indifference.

On 5 Feb 2011, Plaintiff submitted a I/M letter to CO I Mendoza during his classification stating that the Conditions of Confinement at Central Unit are especially Atypical because they offer No Adequate Mental health Services And continuously exacerbate plaintiffs deterioration, furthermore Plaintiff requested to present expert testimony to testify at his classification hearing concerning the Adverse Mental health effects on Long-term solitary Confinement without adequate mental health services. Def. Ryan has acted with a "deliberate Indifference" by continuously denying plaintiff those sacred rights Afforded to him by the U.S. Constitution.

On 5 Feb 2011, Plaintiff submitted a Health needs request citing possible diabetes; Lack of energy, Blurred Vision, eye pain, excessive hunger, unexplained weight loss. Def. Kendell has acted with a "Deliberate Indifference" by not correcting plaintiffs request dispite his repeated request for adequate treatment.

On 10 Feb 2011, Plaintiff Attempted to Exhaust All administrative remedies pursuant to Prison litigation Reform Act, citing that Defs. Ryan And Kendell have acted with a Deliberate Indifference to plaintiffs Mental health Concerns. Plaintiff requested a neuropsychological exam due to memory loss, cognitive, anxiety Attacks, impulse control disorder, headaches. Def. Kendall has acted with a "Deliberate Indifference" when on 8 March 2011 Def concluded "ADOC does not have a staff neuropsychologist to conduct the exam plaintiff is requesting". In addition, plaintiff has submitted approx. 10 Health needs request regarding the mental health and inadequate facilities and staff citing deterioration. A prisons failure to provide sustenance for prisoners "May produce physical torture or a Lingering death" Estelle V. Gamble, 429 U.S.

Page3 L

97,103 (1976) (Quoting In Re Kemmler, 136 U.S. 436,447 (1890)

On 21 Feb 2011, plaintiff submitted a Health needs request citing muscle cramps, weakness, stomach pain, extreme weight loss, requesting Better diet because potassium chloride pills supplements are insufficient

On or about 25 Feb 2011, plaintiff submitted a Health needs request to Def. kendall citing Declined vision and pain to Left eye Def. Kendall continue to show a "Deliberate Indifference" to plaintiff's declining eye sight despite previous Attempts to obtain progressive eye-wear. On or about 9 June 2011 plaintiff was evaluated by a optometrist who implied "I'm suprised your not blind in your left eye yet" Def. Ryan have acted with a continous Deliberate Indifference and has failed to treat plaintiff's serious medical problems.

On March 2011, plaintiff Attempted to Exhaust all administrative remedies citing Def. Ryan and Kendall have acted with a deliberate Indifference for failing to treat plaintiffs unexplained weight loss, stomach pain, muscle cramps and continue to provide a insufficient diets that would be more suitable than Diet supplement

In March 2011, plaintiff requested through the classification Committee to present expert testimony to testify at his classification hearing concerning the Adverse mental health effect on long-term Solitary Confinement without adequate mental health services. Defendant Ryan Has Acted with a Deliberate Indifference by continuously denying plaintiff those rights stipulated in the U.S. Constitution.

On 4 April 2011, plaintiff submitted several Health needs request and thus began to exhaust all administrative remedies pursuant to Defendant Ryan' Deliberate Indifference of housing plaintiff with a Chronic Bronchial Asthma (that was diagnosed by a doctor (the Steinhauser in 2007), behind solid doors in 120 degree temperatures without proper ventilation. At various times Plaintiff requested to speak with those supervisor's in charge, due to no ventilation at all (April-May 2011 in C.B#7). In addition, plaintiff wrote several I'm letters to various staff officials explaining the Lack of ventilation, requesting Additional Accomodations such as a fan to somewhat regulate my body tempurture and room tempurture. Plaintiff was denied such request.

Page3 M

Despite plaintiffs' repeated request for adequate medical and mental health services Defts Goldsmith and Kendell have relied on a practice, policy or custom that prohibits Prisoners/plaintiff from attaining adequate services i.e. "Security overrides medical"

The former warden of San Quentin and Acting secretary of the California Prison system testified that she "Absolutely believes] that we make people worse and that we are not meeting public safety because the way we treat people

On 8 May 2011, plaintiff was assaulted by ADC staff who used excessive force against plaintiff while he was handcuff behind his back prior to the excessive force, plaintiff has made repeated attempts to exhaust all administrative remedies, but has ran into a stonewall in doing so. ADC policies deny the use or permitting the use of unnecessary force towards a prisoner with a mental health score of 3 or higher (plaintiff is a 3), yet staff members fail to provide adequate facilities. Medical staff and ADC failed to preserve evidence pictures of the abuse Despite plaintiff's attempts to have this evidence documented for further litigation. As a result of this excessive force plaintiff suffers severe back pain and pHsyological [SIC] trama.

                    E. Request for Relief

page 6-A

.... Most prisoners including myself are not of sound mind to litigate these complaints adequately in a Federal court without a experienced Lawyer Most prisoners can't even read or spell to there fore exhaust the prison grievance system, pursuant to PLRA 3. Compensatory damages in the amount of $2,000,000.00 against each defendant, jointly and severally. 4. Punitive damages in the Amount of $2,000,000.00 against each defendant 5. A Jury trial on all issues Triable by a Jury 6. Plaintiff's cost in the suit. 7. Any additional Relief this court deems Just proper and equitable

                    Verification
    1.

I have read the foregoing complaint and hereby verify that the matters alleged therein are true except as to matters alleged on Information and belief, and as to those I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct

COUNT II

1. State the constitutional or other federal civil right that was violated: __14th Amendment of the__ __Due Process Clause U.S. Constitution__

2. **Count II.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☒ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☒ Threat to safety
   - ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   The Constitution guarentees prisoners Adequate Medical services, even though it does not guarentee ✓ medical care to individuals outside of prison because, as one court explained " An Inmate must rely on prison Authorities to treat his medical needs; If the Authorities fail to do so, those needs will not be met Estelle v. Gamble 429 U.S. 97, 103 (1976); Courts nevertheless must not shrink from their obligation to "enforce the Constitutional rights of all" persons, including prisoners" Cruz v. Beto, 405 U.S. 319, 321 (1972) (Per Curiam).
   At All times Mentioned Defendant Schriro, Goldsmith, Ryan and Kendall, John Doe Employeed At the Arizona Department of Corrections, Acting under color of state law have ✓ violated plaintiffs rights guarenteed by the United States Constitution And Federal Law

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   Declining Physical, Mental And Emotional pain

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?   ☒ Yes   ☐ No
   b. Did you submit a request for administrative relief on Count II?   ☒ Yes   ☐ No
   c. Did you appeal your request for relief on Count II to the highest level?   ☒ Yes   ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

## E.  REQUEST FOR RELIEF

State the relief you are seeking:

Wherefore plaintiff respectfully pray's that this courthouse enters judgement granting Plaintiff. A Declaration that the Acts and omissions described herein violate plaintiff's rights under the U.S Constitution and laws of the United States, 2. A preliminary and permanent injunction ordering defendant charles L. Ryan et al., to stipulate and enforce the plaintiff's Monitored Resolution Plan and further changes that would improve the mental health prisoners should not have to endure extra torture or punishment, due to their sickness, Lack of qualified staff, screening or Malious treatment by ADOC. This injunction would improve prison conditions and will prevent defts from violating prisoners rights in the future. This is not a isolated incident, unfortunately many prisoners.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 26 July 2011
                  DATE

_____
SIGNATURE OF PLAINTIFF

_____
(Name and title of paralegal, legal assistant, or other person who helped prepare this complaint)

_____
(Signature of attorney, if any)
_____
_____
_____
(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form.  If you need more space, you may attach no more than fifteen additional pages.  But the form must be completely filled in to the extent applicable. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.

page 6-B                              E. Request for Relief

Executed on 7-26-2011

PLAINTIFF SIGNATURE

## A. Stipulation for Relief

1. Make segregation a last resort and a more productive form of confinement, and stop releasing people directly from segregation to the streetz. Tighten admissions criteria and safely transition people out of segregation as soon as possible and go further to the extent that safely allows, gives prisoners in segregation opportunities to fully engage in treatment, work study and other productive activities, and to feel part of a community 2. End conditions of isolation. Ensure that segregated prisoners have regular and meaningful human contact and are free from extreme physical conditions that cause lasting harm 3. Protect mentally ill prisoners. Prisoners with a mental illness that would make them particularly vulnerable to conditions in segregation must be housed in secure therapeutic units. Facilities need rigorous screening and assessment tools to ensure the proper treatment of prisoners who are both mentally ill and difficult to control 4. To provide universal and improved mental health screening for all prisoners when they are first admitted to prison; 5. To provide prisoners with serious mental illness confined in SHU, a minimum of two hours per day of out of cell treatment and/or programming, in addition to an hour of recreation, and for prisoners who will be housed in residential mental health unit, as many as four hours per day out of cell treatment and/or programming, in addition to an hour of recreation 6. To review the disciplinary sentences of all prisoners with serious mental illness for the purpose of removing these prisoners from SHU and Keeplock 7. To add additional Intermediate care program beds for prisoners with mental illness who cannot tolerate general population units; 8. To create a bed residential mental health unit which will provide four hours per day of out of cell programming and/or treatment for prisoners with serious mental illness who would otherwise be in SHU 9. To provide mental health and suicide prevention assessments upon admission to SHU 10. To limit the use of observation cells, where prisoners in psychiatric crisis are deprived of most possessions and clothing and to improve treatment and conditions for prisoners in such cells; 11. To limit the punishment of prisoners with mental illness who hurt themselves because of their illness 12. To limit the use of "restricted diet" as a punishment for maximum custody prisoners with mental illness;

page 8-C                    E. Request for Relief

13. To eliminate isolated confinement of prisoners with serious mental illness in cells that have solid steel doors that severely isolate and restrict communication; and 14. To increase mental health services to prisoner in keeplock confinement. 15. The settlements provisions for the review of disciplinary sentences of prisoners with serious mental illness include the following: A one time review of all previously imposed SHU time: In order to address the historical accumulation of large SHU sentences, and meet the goal of reducting the time prisoners with mental illness are housed in restrictive environments, the settlement requires that all prisoners with serious mental illness have their SHU sentences reviewed by Central Office-staff (FHA and ADC's personnel appointed by the commissioners) for diversion from SHU and for SHU time cuts. This review must be completed within one year. 16. Automatic review of new SHU sentences: All disciplinary determinations in which Mental health was at issue in the disciplinary hearing will from this point forward, be automatically reviewed by the superintendent and FHA if a prisoner receives a SHU sanction of greater than 60 days or an accumulation of 120 days or longer of SHU or Keeplock Confinement 17. Time Cuts: At lease once every 3 months prisoners on the FHA caseload will have their SHU time reviewed for possible time cuts by a Case Management Committee, composed of ADC and FHA staff 18 Central Office staff at ADC and FHA designated by the commissioners will be on this committee, which will provide oversight to the settlement agreement and review the aggregation of SHU confinement sanction for prisoners on FHA (MH caseload on a prison by prison basis 19. Reviews of SHU confinement: Prisoners with serious mental illness that are in SHU will have their housing reviewed atlease every 90 days to determine if confinement in SHU is consistent with both mental health treatment and safety and security requirement. The settlement agreement commits ADC and FHA to moving these prisoner from more restrictive to less restrictive environments and significantly reducting the time that prisoners with serious mental illness are housed in restrictive environments when safely and security permit. 20. Refusals of treatment or Medication: Misbehavior report will not be issued solely for a prisoners refusal to accept medication or treatment 21. Limits on Restricted Diet: There will be limits on use of the restricted diet for prisoners where mental health is at issue in a disciplinary hearing for these prisoners, the restricted diet may only be used as a sanction for safety and security reasons The restricted diet will not be imposed solely as punishment for this group of prisoners who are disruptive and who have lost all other available privileges and good time. 21. SHU: Mental health Assessment and suicide prevention screening. These will take place within one day of admission into SHU.